NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JUAN GABRIEL HERRERA, *Appellant*.

No. 1 CA-CR 22-0106
FILED 9-15-2022

Appeal from the Superior Court in Maricopa County
No. CR2020-114203-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1 This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal. The defendant, Juan Herrera, was given the opportunity to file a supplemental brief, but did not do so.[1] Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Herrera, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

**BACKGROUND**

¶2 Early one evening in April 2020, Officers Bush and Billingslea were on patrol in downtown Phoenix when a "tall white guy" ran up to their car.[2] Herrera was close behind, "screaming threats" at and "trying to engage" the other man in the intersection. Trying to deescalate the encounter, Officers Bush and Billingslea directed both men into a nearby parking lot. Eventually, the officers figured out Herrera was upset the other man had taken his property, referring to the property as a "roller."

¶3 Having heard "cooler," Officer Bush approached the other man, who had both a blue cooler and a "suitcase style bag." The man said the cooler was his. After more discussion, the officers realized Herrera was claiming the suitcase-style bag, not the cooler. The other man told Officer Billingslea the bag was someone else's; Officer Billingslea believed he "was

---

[1] Although this court's order advising Herrera of his right to file a supplemental brief was returned as undeliverable, the record reflects that defense counsel timely notified Herrera, in writing, of his right to file a supplemental brief.

[2] Three other officers, including Officers Smith and Rodriguez, and one police assistant also arrived on the scene, responding to a "911 hang-up call." Herrera primarily interacted with Officers Billingslea and Bush.

trying to take care of it" for the assumed owner. Once told the bag belonged to Herrera, the man returned it without issue and left the area.

¶4 The officers returned the bag to Herrera, who repeatedly demanded the officers "do [their] job," and arrest the thief. Officer Billingslea tried to explain the misunderstanding, but Herrera refused to listen. Herrera continued to yell at the officers who tried to encourage him to move on. Still in the parking lot, Herrera challenged Officer Bush to take his badge off and fight in the alley. After speaking with the management of the business, Officer Billingslea told Herrera the business "would prosecute for trespassing if he didn't leave." The officers even offered him a ride. Instead, Herrera "put his hands out and told [the officers] to arrest him." Pursuant to his request, the officers placed handcuffs on Herrera.

¶5 Though "angry and argumentative"—particularly towards Officer Bush—Herrera moved across the parking lot with the officers without resisting. Once at the police car Herrera stopped cooperating, and began "stiffening up" and "moving around" as the officers tried to search him. At one point, concerned that Herrera planned to spit on him, Officer Bush moved Herrera's head against the police car and placed his thumb on a pressure point under Herrera's jawbone. Upset and still uncooperative, Herrera remained fixated on Officer Bush, calling him names and using profanity.

¶6 As Herrera continued to resist arrest, Officers Bush and Billingslea moved him to a seated position. Once seated, Herrera began kicking at Officer Bush. First swiping Officer Bush's foot, Herrera wound up and struck again, this time hitting Officer Bush's leg. Officer Bush was not injured, and eventually the officers completed the arrest.

¶7 The State charged Herrera with one count of aggravated assault, a class 5 felony, *see* A.R.S. §§ 13-1203, -1204(A)(8)(a) (defining offense for aggravated assault on a peace officer), and one count of criminal trespass in the third degree, a class 3 misdemeanor, *see* A.R.S. § 13-1502. The court dismissed the criminal trespass charge on the State's motion, leaving only aggravated assault for trial.

¶8 Herrera and the State each filed a motion in limine. Herrera sought to exclude an officer's statement to Herrera that "you've just assaulted him." The State sought to admit Herrera's statements to Officer Bush preceding the kicks, including the request to fight in an alley, as probative of intent. Agreeing with Herrera's motion in limine, the State

redacted the "assault" statement. Before trial, the superior court granted the State's motion in limine over Herrera's objection.

**¶9** Herrera was tried in October 2021. After hearing testimony from the officers and reviewing video from the officers' body cameras, the jury found Herrera guilty of aggravated assault. The trial court found he had at least two prior felony convictions. The superior court sentenced Herrera as a category 3 repetitive offender, giving him a mitigated prison term of four years with 208 days of presentence incarceration credit.[3] Herrera timely appealed.

## DISCUSSION

**¶10** After a thorough review of the record, we find no reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Herrera was present and represented by counsel at all critical stages of the proceedings. The evidence presented supports the conviction, and the sentence imposed falls within the range permitted by law. *See* A.R.S. § 13-703(C), (J). As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Herrera's constitutional and statutory rights. Therefore, we affirm Herrera's conviction and sentence.

**¶11** Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, his obligations are fulfilled once he informs Herrera of the outcome of this appeal and his future options. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Herrera has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3] The court granted Herrera one more day of presentence incarceration credit than was warranted but absent a cross-appeal by the State, we will not correct the sentence. *State v. Dawson*, 164 Ariz. 278, 286 (1990).